RECEIVED

MAR - 3 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 08-00205-05, 09 |
| VERSUS | JUDGE DOHERTY |
| MELVIN WAYNE ALEXANDER (05)<br>ABDUL KAREEM FRANCOIS (09) | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Currently pending before the Court are two motions to dismiss, one filed by defendant Melvin Wayne Alexander [Doc. 548] and the other by defendant Abdul Kareem Francois [Doc. 549]. By way of the motions, defendants seek dismissal of the indictment issued against them, arguing reprosecution would violate the Double Jeopardy Clause of the United States Constitution.[1]

Trial of this matter was scheduled to commence on September 28, 2009, and a jury was empaneled on that date. However, because counsel for Darius Fisher, a former co-defendant, had failed to timely review discovery previously provided by the government, the trial was continued until Thursday, October 1, 2009 at 11:00 a.m. On October 1 (the day trial was, again, to commence), the Court advised all counsel that co-defendant Melvin Alexander had begun displaying bizarre behavior, which called his competency to stand trial into question. The government moved for a competency evaluation, and the motion was ultimately granted. Counsel for Mr. Alexander joined in the government's motion, to the extent it sought a competency evaluation.[2] [Doc. 444, p.48]

---

[1] A more detailed recitation of the factual and procedural background in this matter can be found in the Rulings issued on May 3, 2010 [Doc. 455] and May 6, 3010 [Doc. 466].

[2] Counsel objected to the motion to the extent it sought to have Mr. Alexander evaluated at a Bureau of Prisons designated facility, as it was his preference to have Mr. Alexander examined locally.

1

Due to Mr. Alexander's apparent condition, the court initially severed his trial from that of his co-defendants, as it was anticipated Mr. Alexander's competency evaluation would take a significant amount of time to perform and complete.[3] The government objected to the severance, and moved for a continuance of the trial, arguing as a result of the delays caused by counsel for Mr. Fisher, two of the government's witnesses had become unavailable, and noting Mr. Fisher's counsel position, at that time, as to a continuance.[4] Counsel for Mr. Alexander and Abdul Francois joined

---

[3] In fact, the Court ordered Mr. Alexander to undergo a mental evaluation on October 1, 2009, the psychiatric evaluation was completed on or about January 28, 2010, the psychiatric report was received by this Court on February 4, 2010, and a Ruling regarding Mr. Alexander's competency issued on February 23, 2010. [Docs. 354, 417 and 422]

[4] Specifically, the following colloquy occurred:

> THE COURT: . . . Mr. Grayson, you wish to be heard?
>
> MR. GRAYSON: Yes, Your Honor. First, the government objects to the severance.
>
> THE COURT: Yes. Basis.
>
> MR. GRAYSON: Cause there is no basis for severance, Your Honor.
>
> THE COURT: No basis for severance.
>
> MR. GRAYSON: No, ma'am. When an individual, one of the defendants -- there has to be some grounds under the statute that there's a basis for the severance, and when a person is joined with other defendants and the question is with regard to competency, the period of time for all of the defendants would be tolled under the Speedy Trial Act. Additionally, Your Honor, the government is also going to move for a continuance, and the government moves **for a continuance** because the defense has refused to stipulate to the forensic chemists or to the chain of custody in this matter, and as a result of the delay that we had today, the government is not able to logistically get two forensic chemists to testify timely enough in this matter.
>
> . . .
>
> MR. GRAYSON: **And Mr. McCorvey earlier had iterated that he was intending to ask for a continuance for purposes of being able to examine the government's voluminous evidence.**

[Doc. 444, pp.23-4]

2

in the government's objection to a severance.[5] [Doc. 444, pp.24, 27] Counsel for Mr. Fisher first stated he had no opinion with regard to severance and/or continuance but would "reserve all rights and remedies," he later advised the Court he joined all other counsel in their objection to severance, and finally, after having been provided by the Court with the opportunity to confer with his client privately, counsel for Mr. Fisher withdrew his objection to a severance, stating that because his client would likely not be released on bond pending the recommencement of trial, he was now in favor of severing the trial so that his client could "have his day in court." [Id. at 24-5, 27, 35] The Court then asked if anyone else wished to be heard, to which counsel for Mr. Francois replied, "Abdul Francois maintains . . . the same statement that we made to the Court earlier. We agree that the case should not be severed." [Id. at 35]

Ultimately, after full discussion, the Court declined to sever Mr. Alexander, and rather granted the motion for continuance. [Doc. 444, pp. 36-38, 40-41, 44] Only when outside the presence of his client, counsel for Mr. Fisher had repeatedly argued he needed additional time to prepare, yet when his client was present with him in court, counsel ultimately shifted his position and *objected to a continuance*, arguing it was in violation of the "Speedy Trial Act" and Mr. Fisher's "due process rights." [Id. at 44] Nevertheless, the Court found a continuance was warranted in light of the *collective delays* caused by counsel for Mr. Fisher, Mr. Alexander's need for a competency evaluation, the government's argument they were unable to go forward with the trial as certain witnesses were no longer available due to the multiple delays, and counsel for Fisher's repeated

---

[5]At that time, the Court noted it had anticipated counsel for Mr. Alexander and Mr. Francois would likely object to a severance, because throughout the proceedings, those defendants had been consistent in their insistence on going to trial with Mr. Fisher, as Mr. Fisher was considered to be the primary target. [Doc. 444, p. 26]

3

assertions he needed additional time to review discovery, and after discussion of certain alternatives within which counsel for Mr. Fisher' made the *legitimate choice* to exercise his right not to stipulate to the reports of the unavailable chemist witnesses continuance was granted. In order to allow time for the competency evaluation and for continuity of counsel, **the trial was continued until May 10, 2010 -** *i.e.* **more than seven months.** [Id. at 60] It was within this point in the trial, **with a jury already empaneled,** that the Court first asked if any party intended to move for a mistrial. [Id. at 62] Hearing no motion, the Court declared a mistrial *sua sponte*, **determining a mistrial was warranted as the Court could not realistically keep the jury empaneled until the trial could be rescheduled and the competency hearing likely completed, which proved to be some seven months.** [Id. at 62-3] **No counsel objected, explicitly or otherwise, to the declaration of a mistrial.** Notwithstanding, *once a continuance, which ultimately proved to be over seven months, had been granted with a jury already empaneled, this Court's opinion was the mistrial had become a fait accompli.*[6]

Almost six months later, counsel for Mr. Fisher filed a motion to dismiss the Indictment on double jeopardy grounds. The Court denied the motion, for the reasons noted above and in its prior rulings. [*See* Docs. 440, 455, 456] Regrettably, in this Court's written rulings on Fisher's motion, (issued seven months post-trial), it erroneously stated Mr. Fisher had objected to the *sua sponte declaration of a mistrial*, when in fact, **he had not**; rather, Mr. Fisher had objected only to *the granting of a continuance*. (A careful review of the transcript in the course of drafting this Ruling revealed the Court was in error - **counsel for Mr. Fisher did not object to the mistrial, nor did**

---

[6]As will be discussed, on appeal, the Fifth Circuit focused on and declared the sole reason for this Court's declaration of *a mistrial* was the unavailability of the government's witnesses.

**counsel for his co-defendants.** [*See* Doc. 444, pp. 62-4])[7] Mr. Fisher appealed and was granted a writ of mandamus to stay his reprosecution pending the outcome of the appeal.

On appeal, the United States Court of Appeals for the Fifth Circuit stated the law and found as follows:

> We first address whether Fisher *impliedly consented to the mistrial by failing to sufficiently object*. **"If a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding."** *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir.1997) (citation omitted). This is not a bright-line rule; it is a case-by-case determination. Our guiding standard for these determinations is whether the objection gave the court the opportunity to consider and resolve the concern. *See Puckett v. United States*, --- U.S. ----, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009)(explaining that the purpose of timely objections is to "give[ ] the district court the opportunity to consider and resolve them"); *United States v. Williams*, 985 F.2d 749, 755 (5th Cir.1993) ("In determining the sufficiency of objections we apply the general principle that an objection which is ample and timely to bring the alleged ... error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to ... preserve the claim for review." (internal quotation marks and citations omitted) (ellipses in original)). *Here, the very judge who presided over the hearing found that Fisher had sufficiently objected: "Prior to declaring a mistrial, the Court provided all counsel with the opportunity to make any suggestions or objections and place any argument on the record they wished - only counsel for Darius Fisher did [sic]."*[8] *We see no basis to disregard the judge's written finding, based on her firsthand observations that Fisher had given her a sufficient opportunity to consider his opposition to the mistrial. Accordingly, we hold that there was no implied consent to the mistrial.*

*United States v. Fisher*, 624 F.3d 713, 717-18 (5th Cir. 2010)(emphasis added). The appellate court

---

[7]Counsel for Mr. Fisher, throughout these proceedings, tended to *frequently* change his position and trial strategy, was equivocal when asked to clarify his positions, and presented a challenge when attempting to discern his actual, final position on any given issue at any given time and changed his positions as to the continuance as the discussions progressed. In part due to the foregoing, this Court was of the opinion (seven months post trial) counsel for Mr. Fisher had objected to the *mistrial*, when in reality, he had objected only to the *continuance*.

[8]This Court's Ruling actually reads, "only counsel for Darius Fisher objected." [Doc. 466, p.7] However, a close reading of the transcript reveals counsel for Mr. Fisher explicitly objected to the continuance, but did not explicitly object to the mistrial. Again, this Court was in error.

clearly relied upon *this Court's erroneous statement* in its written ruling on Mr. Fisher's motion, that counsel for Mr. Fisher had objected to the declaration of a *mistrial*, when in fact *the record is clear he had objected only to the* **continuance**. This Court's written statement, which is in direct contradiction with the record, was recognized by this Court with a careful reading of the trial transcript in conjunction with Mr. Francois and Mr. Alexander's motions. Consequently, this Court's error, perhaps, has unduly skewed the appellate court's findings and the possible result as to the motions of Mr. Francois and Mr. Alexander now before this Court. Under these unfortunate circumstances, to accept the appellate court's ruling as to *Fisher*, on its face, could lead to unanticipated and unfortunate results as to Mr. Francois and Mr. Alexander, and generate fact specific argument as to Mr. Francois and Mr. Alexander, and, perhaps, could, unintentionally shift long standing jurisprudence. Indeed, argument could be made that with these motions, following the face of the appellate court's ruling in *Fisher* could compound this Court's initial error. However, if the actual record prevails, a different result could flow. A reading of the actual record, as applied to the result found in the appellate court's ruling in *Fisher* - by which this Court is bound - could argue the appellate court has broadened the standard for objecting to a declaration **of mistrial**, finding an ***explicit objection no longer required***, as an ***implied objection*** may now be sufficient. *Fisher* at 718-19. Previously, only "timely, ***explicit objections***" **to the mistrial** would suffice. *See e.g. U.S. v. Palmer*, 122 F.3d 215, 219 (5th Cir. 1997)("Palmer had a meaningful opportunity to object, yet failed to do so. Her expressed desire "to get it over with" was not an objection, nor was it stated contemporaneously with the declaration of mistrial. ***Our precedents require that criminal defendants make timely, explicit objections to a sua sponte declaration of a mistrial, lest they be***

*held to have impliedly consented to it.*" (emphasis added)).[9] The record reflects counsel for Mr. Fisher actually made no such objection, however he has, nonetheless, been held not to have impliedly consented. Mr. Francois and Mr. Alexander, also, made no objection to the mistrial, and also wish, like Mr. Fisher, to be found not to have "impliedly consented" to the mistrial.

Clearly, this Court's initial misstatement, relied upon by the appellate court has created a conundrum illustrated by the possibility of inconsistent results presented by the motions of Mr. Francois and Mr. Alexander.

The *Fisher* court then stated, "When a defendant *does not consent* to a mistrial, the [Double Jeopardy] Clause permits reprosecution only if there was manifest necessity for the mistrial." *Id.* at 718 (citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978))(emphasis added).[10] In its examination of whether or not manifest necessity existed for the mistrial when addressing Fisher's motion, the appellate court found, "Here, the basis for the mistrial was the unavailability of the two government witnesses." *Id.* at 719. The appellate court further found Mr. Alexander's competency issues and the multiple delays caused by counsel for Mr. Fisher did not contribute, in any manner, to the need to declare *a mistrial*.[11] However, the appellate court in no way addressed the stark reality that a continuance as to all defendants, which ultimately proved

---

[9]*See also U.S. v. Benjamin*, 129 Fed.Appx. 887, 889 (5th Cir. 2005)("Benjamin did not contemporaneously and expressly object to the trial court's sua sponte declaration of a mistrial at trial, but filed his 'motion to bar retrial on grounds of double jeopardy' nearly two weeks after the trial court declared a mistrial. Accordingly, his double jeopardy argument is waived by implied consent.")

[10]Here, counsel for Fisher did not consent to the mistrial, but neither did he object to the mistrial; likewise, counsel for Mr. Alexander and Mr. Francois did not explicitly object to the mistrial, nor, as this Court will find, did they consent to the mistrial.

[11]*See also id.* ("In sum, the record shows that, but for the government's concern about its witnesses' scheduling conflicts, the court would not have declared a mistrial."); *id.* at 722 ("As explained, the basis for this mistrial boils down to the scheduling conflicts of the government's witnesses, not Alexander's condition or the discovery issue.")

to be some seven months, had been granted with a full jury already empaneled, thus necessitating, at that point, as a practical matter, it would seem, a mistrial.[12] *Id.* at 719.

Next the appellate court turned its attention to manifest necessity:

> In short, the district court declared a mistrial because of the scheduling conflicts of the government's witnesses, and we agree with the Third Circuit that "[s]cheduling considerations ... do not outweigh the Court's duty to protect the defendants' constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir.2004) (citing *United States v. Jorn*, 400 U.S. 470, 479-80, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). The district court's duty to protect Fisher's double-jeopardy right required it to carefully consider reasonable ways to resolve the scheduling conflicts, something our trial courts routinely do. Nothing in the record, however, shows that the district court did so here. Thus, we hold that there was no manifest necessity.

*Id.* at 723 (footnote omitted). The court then concluded: "*Because Fisher did not impliedly consent to the mistrial and because the district court did not carefully consider reasonable alternatives to a mistrial, we REVERSE the denial of Fisher's motion to dismiss the indictment and we render a judgment of dismissal.*" *Id.* at 724 (emphasis added).[13]

---

[12]Perhaps, the more pertinent inquiry this Court should take from the appellate court's Ruling is whether a continuance as to all parties, for a period of time sufficient to allow for continuity of counsel and a competency hearing for Mr. Alexander, was warranted in this matter. However, that issue was not presented to this Court or the appellate court by any party.

[13]The appellate court frames the issue as follows: "Because Fisher did not impliedly consent to the mistrial," manifest necessity must exist for the mistrial or reprosecution is barred on double-jeopardy grounds. *Fisher* at 724. However, as noted, prior jurisprudence had heretofore held: "If a defendant does not **timely and explicitly object** to a trial court's *sua sponte* declaration of mistrial, that defendant *will be held to have impliedly consented to the mistrial* and may be retried in a later proceeding." *Palmer* at 218 (emphasis added); *see also Benjamin* at 889. Thus, it seems one could now argue that although a defendant (such as Mr. Fisher) may not, actually, have timely, nor explicitly objected to the declaration **of mistrial**, nonetheless, an implied objection to the mistrial could be found within counsel's silence and be sufficient, as that is the logical sequella of the appellate court's existing ruling. However, because in *Fisher* the basis for the appellate court's finding that an objection to the mistrial was lodged was the misstatement by this Court, a skewed result has ensued: "Here, the very judge who presided over the hearing found that Fisher had sufficiently objected. . . . We see no basis to disregard the judge's written finding, based on her firsthand observations that Fisher had given her sufficient opportunity to consider his opposition to the mistrial," *Fisher* at 718, therefore, it would seem the logical sequella should not prevail. Again, this Court's written ruling, issued some seven months after the mistrial was declared,

8

The record reflects, however, that **none of the three defendants objected to the mistrial**, thus, it would argue the appellate court's reasoning as to *Fisher*, should apply with equal force to Francois and Alexander. It would, also, seem the reasoning declared by the appellate court, regarding this Court's failure to protect Mr. Fisher's constitutional rights should, therefore apply equally to Mr. Alexander and Mr. Francois. The record is clear, no counsel made an objection to the declaration of mistrial. Consequently, *if this Court did not carefully consider reasonable alternatives to the mistrial with regard to Mr. Fisher, neither did it do so with regard to his co-defendants*. (Again, the record reflects *none* objected to *the mistrial*, and this Court's written misstatement was in error.) And, if indeed an implied objection to a mistrial may be sufficient as to *Fisher*, such that there was no implied consent to the declaration of mistrial as to *Fisher*, then it would seem, the same result should flow for Mr. Francois and Mr. Alexander as, like Mr. Fisher, neither Mr. Alexander nor Mr. Francois would have "impliedly consented to the mistrial by failing to sufficiently object." *Fisher* at 717 ("We first address whether Fisher impliedly consented to the mistrial by failing to sufficiently object."); *id.* at 724 ("Because Fisher did not impliedly consent to the mistrial . . . , we REVERSE the denial of Fisher's motion to dismiss the indictment and we render a judgment of dismissal.") If indeed that were to be the case, it would seem manifest necessity, also,

---

contains a misstatement confusing Fisher's counsel's position **as to the continuance** for that **as to the mistrial**, and is in clear contradiction **with that which actually occurred** at the trial as reflected in the record. **After the mistrial was declared, the record clearly reflects no counsel lodged any objection to the mistrial, despite several opportunities to do so.** [Doc. 444, pp. 62-64] Accordingly, if this Court's error is allowed to stand uncorrected and form the basis for the appellate court's finding, strong argument could be made, upon review of the actual record, that if a defendant is silent when a mistrial is declared, he will no longer necessarily "be held to have impliedly consented to the mistrial," as *an implied objection* to the mistrial may now be found, clearly an unintended result. *Palmer* at 218 ( "If a defendant does not **timely and explicitly object** to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding.")(emphasis added)).

9

would, equally, have not existed as to Mr. Alexander or Mr. Francois, for the same reasons given by the appellate court as to Mr. Fisher, and therefore, Mr. Francois' and Mr. Alexander's motions should, perhaps, be granted. However, as will be discussed, the factual positions of Mr. Francois and Mr. Alexander are vastly different, and if the focus of the inquiry has shifted away from whether an explicit objection actually was made, the different factual situations of Mr. Francois and Mr. Alexander might become relevant as to the determination of manifest necessity.

In their respective motions, both Mr. Alexander and Mr. Francois first argue they were not provided with adequate opportunity to object to the **"actual"** grounds for the mistrial (as found by the appellate court), stating:

> [C]onsidering the Fifth Circuit's factual finding that "the [real] basis for the mistrial was the unavailability of the two government witnesses", a "fact" never acknowledged by the trial court, it can hardly be said that any of the defendants were given adequate opportunity to consider, and object, to that specific reason.

[Doc. 548-1, p.2 (citations omitted); *see also* Doc. 549, ¶6 ("To the extent that Melvin Alexander's arguments are applicable, Abdul Francois adopts those arguments as his own.")] While the Court disagrees with counsel that "'the unavailability of the two government witnesses', [was] a 'fact' never acknowledged by the trial court,"[14] the Court certainly agrees the unavailability of the government's witnesses was not discussed *in relation to the mistrial* and it certainly was not discussed in a manner suggesting it was the *sole factor* for the mistrial, as indeed, it was *not* the sole factor or even a factor prompting *the mistrial*. The mistrial was prompted by a continuance anticipated to be lengthy in light of the need for the competency hearing having been granted, and the jury having already been empaneled. At the time of the ruling, as to the mistrial, all present understood the *"collective situation"* which included the government's problem with their witnesses

---

[14]*See e.g.* Doc. 444, pp.23-24, 62-63.

10

**which had led to the continuance**, ultimately of seven months, and the *mistrial* followed with no true discussion, and no objection by any defendant. Thus, in that regard, this Court fully agrees with counsel for Mr. Alexander and Mr. Francois that they were not provided with the opportunity to object to *a mistrial declared solely on the basis that two government witnesses had become unavailable*. Thus, it seems Mr. Alexander and Mr. Francois' arguments are not without merit - how could either be deemed to have had the opportunity to object to a ruling of the Court, based upon *a single fact* never identified by the Court as a basis for its ruling **as to the *mistrial***.

Mr. Francois additionally argues "the granting of the mistrial without manifest necessity [is] the law of the case and seeks dismissal for Abdul Francois on the same basis." [Doc. 549, ¶4] He then argues, "With the 'manifest necessity' prong now the law of the case, the only remaining issue is whether Francois timely and sufficiently objected to the granting of the mistrial." [Id. at ¶5] Mr. Francois continues:

7.

In addition, Francois suggests to this Court that the requirement for him to timely and sufficiently object to the granting of the mistrial is not required when a co-defendant advances such objection and the court after considering the objection, denies it, and nonetheless, grants the mistrial.

8.

It is unquestioned that Darius Fisher objected to the mistrial.[15] It is also unquestioned that the Court took his objection into consideration, (as declared by the Court of Appeals) and overruled his objection.

9.

It is less clear whether or not Abdul Francois explicitly or sufficiently objected to the mistrial in that, it was obvious that notwithstanding the objection of

---

[15]Again, a careful reading of the record reflects Darius Fisher did not object to the mistrial, however, ultimately objected to the continuance – notwithstanding having frequently argued for delay.

11

Darius Fisher, the mistrial would be granted by the Court. Nothing that counsel for Abdul Francois might have said on the record was going to modify the strange twist of events which created the issue or was going to cause the Court to deviate from what eventually became its ruling. In other words, an additional objection by Francois would have a meaningless act which would not have changed the course of events.

10.

As a result of the foregoing, the requirement of a second defendant to make a verbal objection to the granting of the mistrial was not required in light of the events that were taking place and because the granting of the mistrial was without "manifest necessity" resetting this matter for trial as to Abdul Francois would also result in double jeopardy.

[Doc. 549, pp. 2-3] Again, a review of the record reveals Mr. Fisher did not *explicitly object* **to the mistrial**. The appellate court's reliance upon this Court's misstatement, found in the written ruling on Mr. Fisher's motion, and this Court's misstatement, itself, are extremely unfortunate, as they have led to a skewed result which could be argued to support a finding that an *explicit objection* is no longer required in the Fifth Circuit, a result clearly not intended by the appellate court as they expressly relied upon this Court's misstatement noting an objection to the mistrial had been made by Fisher's counsel.

However, this Court need not read the appellate court's ruling so broadly, as the Court agrees with counsel for Mr. Francois, that there was nothing he could have said or done *once the continuance, ultimately determined to be of seven months, had been granted as to all parties, and the jury had already been empaneled*, to dissuade this Court from, at that point, granting a mistrial. Not to have declared a mistrial at that point would have required the Court to hold over a jury until trial could be rescheduled, which was ultimately determined to be some seven months. Once a unique combination of circumstances had developed creating the "perfect storm," leading this Court to grant a continuance with a jury impaneled, the Court, erroneously it would seem, saw no recourse

available other than to delcare a mistrial. However, indeed, if counsel for Mr. Fisher is deemed to have objected to the mistrial when the record clearly reflects he did not, and the Court is deemed to have denied the objection which was not made, Mr. Francois makes a rather seductive argument that he is similarly situated, thus, the same result should flow as to him.

As noted by the appellate court, the undersigned "initially severed Alexander from the case so that the trial could proceed as to Fisher on October 2, while Alexander received a competency evaluation," but then "altered this ruling . . . when the government objected," and argued two of its witnesses were no longer available to testify at trial due to the delays - collectively over four days delay - caused by counsel for Mr. Fisher, and noted counsel for Mr. Fisher's earlier protestations as to his need for delay to address "voluminous discovery." *Id.* at 716. Thereafter, when counsel for Mr. Fisher *changed his position*, after conferring privately with his client, and withdrew his objection to the severance, discussion continued **as to ways to avoid the continuance**, and the appellate court found, **as to the mistrial**:

> The court did not inquire about the scheduling conflicts of the witnesses or explore ways to reconcile those conflicts with the trial schedule. Instead, the court then told Fisher that it could not go forward with his trial, "unless [he is] willing to stipulate to the reports of the chemists and the aspect of chain of custody that they would testify to."

*Id.* at 717 (alterations in original).[16] While it is true, during the ever shifting and evolving landscape, traversing from severance to continuance, and ultimately to mistrial, much discussion was had, the record reflects little, if any, was had *as to the mistrial*. Further, although counsel for Mr. Alexander

---

[16]*See also id.* at 722 ("The district court accepted these representations without question, and it did not explore readily apparent ways to resolve the scheduling conflicts"); *id.* at 723 ("What is particularly striking here is that, instead of assessing the government's claim of witness unavailability and exploring ways to resolve scheduling conflicts, the district court immediately turned to Fisher's attorney and said . . . '[s]o unless . . . you were willing to stipulate to the reports . . . then I cannot go forward with your client's trial because the government cannot get their witnesses here . . . .'") This discussion, however was part of the discussions had within the context *of the continuance*.

and Mr. Francois did not explicitly object to the mistrial, it is equally clear from a reading of the transcript that *neither did counsel for Mr. Fisher*. [Doc. 444, pp. 62-4] Moreover, all argument and exploration of alternatives *was addressed within the discussion and consideration of the severance and continuance,* and the record reflects *no further discussion or objection once the Court declared the mistrial.* Rather, perhaps erroneously, this Court had become convinced *a continuance* was necessary for multiple reasons, and once the continuance was granted and the jury remained empaneled, this Court was of the opinion (albeit it would seem, again erroneously) that the only remaining viable option was to declare the mistrial. Consequently, counsel for Mr. Francois and Mr. Alexander are correct – *once the continuance was granted* any objection and argument they might have made *as to the mistrial* would not have persuaded the Court that *the mistrial* was not, at that point, necessary. *See United States v. Castillo*, 430 F.3d 230, 240 (5th Cir. 2005)(prosecutor's failure to object to *sua sponte* downward departure from sentencing guidelines, despite explicitly being provided the opportunity to do so on the record, did not prejudice him on appeal, as any objection would have been futile)(citing Fed.R.Crim.P. 51 ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party)).[17] Whether, however, the Court's determination as to the necessity of the continuance and its length, was ultimately error is a question not before this Court and one likely answering to a different jurisprudential standard than that of a mistrial, nor is it one argued to the appellate court.

Throughout the proceedings, each time counsel for Mr. Fisher argued for and/or alluded to

---

[17]*See also United States v. Bernal*, 814 F.2d 175, 182-83 (5th Cir. 1987)); 3B Charles Alan Wright, et al., Federal Practice and Procedure § 842 (3d ed. 2010)(quoted with approval in *Castillo* at 243)("The general rule requiring counsel to make clear to the trial court what action they wish taken should not be applied in a ritualistic fashion. If the problem has been brought to the attention of the court, and the court has indicated in no uncertain terms what its views are, to require an objection would exalt form over substance.")

his desire for a delay (which were many), counsel for co-defendants consistently expressed their desire **to be tried along with Mr. Fisher, who was considered the primary target, rather than to be severed and tried separately**. Thus, arguably, neither would have "impliedly consented" - if that is the proper inquiry - to a result where they were to be tried separately from Mr. Fisher. In sum, this Court finds that, regrettably, there exists the unique circumstance where a written misstatement by this Court, which is in direct contradiction with the actual record, has been relied upon by the appellate court, and that reliance risks forcing a skewed result as to the constitutional rights of Mr. Francois and Mr. Alexander, or the shifting of the appropriate legal inquiry from whether one has *explicitly objected* to a much less certain fact based inquiry of whether one has "impliedly objected." The fact that counsel for Mr. Alexander and Mr. Francois did not explicitly and fully state their objection *to a mistrial,* when the record reflects neither did counsel for Mr. Fisher, should not subject them to a different legal standard than Mr. Fisher, nor render their consistent positions of attempting to ensure their clients were tried with Mr. Fisher hollow. *Castillo* at 240. Counsel for Mr. Francois is correct when he states "an[y] additional objection by Francois would have [been] a meaningless act which would not have changed the course of events." [Doc. 549, p.3] Strong argument can be made that counsel for Mr. Francois and Mr. Alexander (who remained consistent throughout these proceedings that they wished to be tried with Mr. Fisher) would not have *implicitly consented* to a ruling of the Court which might have separated the trial of their clients from Mr. Fisher. Thus, under these unique circumstances, and ***only if*** the appropriate inquiry has in fact shifted to whether one has *"impliedly consented"* when, in fact, he or she did not *explicitly object*, arguably Mr. Francois and Mr. Alexander did not "impliedly consent," as they would have explicitly objected had they known the end result, or felt their objections would have been "a meaningless act."

15

Further, if an *explicit objection* is no longer required – a result this Court does not find as the appellate court's ruling, it would seem, is founded, at least in part, upon a misstatement of this Court belied by the actual record – and if neither Mr. Fisher nor Mr. Alexander were to be found to have "impliedly consented" to the mistrial, the law is clear, reprosecution can only be had if manifest necessity exists. *See Fisher* at 718 (citing *Arizona v. Washington*, 434 U.S. 497, 505 (1978)("When a defendant does not consent to a mistrial, the [Double Jeopardy] Clause permits reprosecution only if there was manifest necessity for the mistrial.") And, as the appellate court has found manifest necessity did not exist as to Mr. Fisher because this Court did not uphold its "duty to protect Fisher's double-jeopardy right [which] required it to carefully consider reasonable ways to resolve the scheduling conflicts" of the government's witnesses, it would seem the Court would have committed the same failure as to Mr. Francois and Mr. Alexander, and therefore, must find manifest necessity would, also, not exist for the mistrial as to defendant Abdul Francois. *Fisher* at 723.[18] However, as suggested earlier, the facts are quite different as to Mr. Alexander. Melvin Alexander, at the time the decision was made by this Court to declare a mistrial, was cowering naked in his cell and said to be eating his paperwork and foaming at the mouth; thus, with regard to Mr. Alexander, the Court finds manifest necessity would have existed, as it appeared at the time the mistrial was declared, Mr. Alexander's competency to stand trial was in true question. *See e.g. Featherston v. Mitchell*, 418 F.2d 582 (5th Cir. 1969)(Where there is serious question with regard to defendant's ability to understand the nature of the proceedings against him and to assist in his own defense, a trial cannot progress, and the declaration of a mistrial, *sua sponte*, is proper). As stated in *Featherston*:

---

[18]*See also id.* at 724 ("Because Fisher did not impliedly consent to the mistrial *and because the district court did not carefully consider reasonable alternatives to a mistrial*, we REVERSE the denial of Fisher's motion to dismiss the indictment and we render a judgment of dismissal." (emphasis added))

16

> Underlying section 4244 [commitment for psychiatric evaluation] is the well-established principle in our jurisprudence that public justice is not served by trial of an individual for an alleged offense when that individual is mentally unable reasonably to comprehend the action being taken against him or to assist in the defense of his liberty. Protection of Featherston's right not to be so tried, notwithstanding the protestations of his lawyers, made imperative a mistrial in this case. Declaration of that mistrial will not bar further action against Featherston when and if he is determined to be mentally competent to stand trial.

*Featherston* at 586.

In light of the foregoing, and as this Court is bound by the appellate court's prior ruling in this matter, it would seem this Court must GRANT the motion to dismiss filed by Abdul Francois [Doc. 549], and DENY the motion to dismiss filed by Melvin Alexander [Doc. 548]. However, this Court has true concern whether such rulings by this Court are proper, as they would act only to further compound this Court's initial error by way of its misstatement, confusing Mr. Fisher's counsel's ever changing positions, and finding he had objected *to the mistrial* when the record is clear he did not, but had, ultimately, objected *to the continuance*. To read the appellate court's prior ruling so broadly as to change long standing jurisprudence, when the ruling was, at least in part, premised upon a misstatement and error of this Court, would seem to be ill advised. It is respectfully suggested this Court's error in its written ruling, referring to Mr. Fisher's objection *to the continuance* as an objection *to the mistrial*, be recognized and the finding be modified to reflect the actual record, otherwise this Court's misstatement might lead the appellate court down a path it might not otherwise have taken and two defendants who, but for this Court's misstatement, are for all relevant purposes in exactly the same legal position, will receive drastically different results on the same Constitutional issue. Accordingly, this Court respectfully invites the appellate court to correct this Court's misstatement, found within its written ruling on Mr. Fisher's motion, and alter its finding to reflect the record, that counsel for Fisher did not explicitly object to the mistrial, nor

did Mr. Francois and Mr. Alexander, and thereafter, clarify its intent, and purpose, so that guidance will be available not only to this Court for purpose of the motion presently before the Court, but also as to other district courts.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___3___ day of March, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

SENT
3-3-11
BY OB
TO USPO